IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 4, 2020 Session

## STATE OF TENNESSEE v. AUDREY DOWNS

**Appeal from the Criminal Court for Shelby County**
**No. 95-04697, P-17849, P-40061  Paula L. Skahan, Judge**

_____

### No. W2019-01485-CCA-R3-CD
_____

The Petitioner, Audrey Downs, entered "best interest" pleas to felony murder and aggravated rape pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), and received concurrent sentences of life imprisonment without the possibility of parole and twenty-five years.  In 2002, the Petitioner successfully petitioned for DNA testing of a condom collected from the scene where the victim's body was discovered, and the results excluded the Petitioner as a contributor to the DNA.  Because the State subsequently introduced evidence that the condom was unrelated to the crime, the Petitioner was denied permission to reopen his post-conviction petition.  The Petitioner sought further testing of the condom to determine whether the victim's DNA could be recovered, in an attempt to link it to the crime.  The trial court summarily denied further testing, and this court remanded for the trial court to conduct the required analysis of the statutory factors. *State v. Audrey Downs*, No. W2018-00391-CCA-R3-CD, 2018 WL 6650597, at *2 (Tenn. Crim. App. Dec. 18, 2018), *no perm. app. filed*.  On remand, the petition was again summarily dismissed, and the Petitioner appeals.  We conclude that the petition did not allege a prima facie case for DNA testing under the statute, and we accordingly affirm the dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Monica A. Timmerman, Bartlett, Tennessee, for the appellant, Audrey Downs.

Herbert H. Slatery III, Attorney General and Reporter; Andrew Coulam, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

This court summarized the factual underpinnings of the Petitioner's convictions as follows:

> The record reflects that on February 28, 1995, the police discovered the nude body of thirty-two-year-old Penny Maness in some woods behind the "'Frayser Jaycee[s']'" building in Memphis. She had been strangled to death, and a wire had been twisted around her neck. The medical examiner concluded that the wire had been placed around her neck after her death.
>
> The [Petitioner] was the last known person seen with the victim alive. The police arrested him, and he eventually confessed to raping and strangling her when she refused his sexual advances. He also revealed details of the crime that were consistent with the crime scene evidence, including that he placed the wire around her neck after he strangled her in order to disguise the crimes, and described leaving her body in the exact location and position as the police discovered it.

*Audrey Downs*, 2018 WL 6650597, at *1.

After the Petitioner entered *Alford* pleas to felony murder and aggravated rape, he sought post-conviction relief, and the denial of his petition was affirmed on appeal. *Audrey E. Downs v. State*, No. 02C01-9710-CR-00390, 1998 WL 742379, at *1 (Tenn. Crim. App. at Jackson, Oct. 23, 1998) (order). In 2002, the Petitioner sought and was granted post-conviction DNA analysis of semen in a condom collected at the crime scene, and he was excluded as a contributor to the DNA from the condom. *Audrey Downs*, 2018 WL 6650597, at *1.

In 2004, the Petitioner filed a motion to reopen his post-conviction petition. *Id.* At the hearing on the motion, Officer Phil Nason testified that the victim's body was found at the edge of the woods, 129 feet to the north of the lodge. The lodge area was dark, wooded, and known as a "lover[s'] lane" or "a parking place for couples." Officer Nason collected everything near the scene, including a beer bottle, beer can, and whiskey bottle. He collected a set of keys and a piece of jewelry in the shape of a cross; he could

not recall whether the jewelry was an earring or pendant.[1]  He likewise collected a condom, which he found on the other side of the lodge, almost 200 feet from the body.

The Petitioner testified that he gave three statements to law enforcement.  The Petitioner asserted that his first statement, in which he denied any involvement, was the truth, and that the subsequent confessions he gave were coerced.  He averred that he was placed in a fifty-degree room with no clothing, mattress, or toilet paper, that he was then handcuffed to a chair and not permitted to use the bathroom or eat or drink for ten hours, and that he was told he would spend his life in jail if he did not confess.  According to the Petitioner, his confessions included accurate details of the crime because the police were "feeding him stories."  He stated that if the DNA had been tested, he would not have pled guilty.

The Petitioner agreed that he told police that he took the victim behind the lodge in his van, that she refused to have intercourse with him, and that he strangled her in a "fog."  He agreed that he then told them he took the victim's body from the car and placed it in the woods and subsequently put a wire around her neck, which was corroborated by medical evidence.  However, he asserted the police had told him what to say in his confessions.  The Petitioner further asserted that the police had told him to say he had a sexual problem and needed help with his sexual urges, which included rape fantasies.  The police likewise told him to say he had bras and panties stored at the home of a friend.  He explained that a box of women's underwear and pornographic magazines found at the home of someone with whom he had stayed belonged to a previous girlfriend.  The Petitioner agreed that these items existed and contradicted his earlier statement that police had told him to say those things existed.  He agreed that his confessions never alleged that he used a condom when assaulting the victim.

The Petitioner averred he did not have intercourse with the victim and that the condom excluded him as a potential perpetrator of the rape and murder.  He asserted that, at the time of his arrest, his coat and earrings were in the console of a van and that his sister could testify that a man, whom the Petitioner alleged was involved with the murder, rifled through the van.  He agreed that the earring recovered from the murder scene belonged to him, but asserted it was the earring he had left in his van at the time of his arrest.  He agreed that the small set of keys also belonged to him, but he explained he had lost the keys two months prior to the murder, while working at the lodge.

The motion to reopen the post-conviction petition was denied, and this court dismissed the appeal, concluding that it had no authority to waive a timely application for

---

[1] Photographs of the crime scene were introduced but not included in the record on appeal.  The State summarized in its argument at the hearing that an earring and keys were located very near the body.

permission to appeal from a motion to reopen a post-conviction petition and that the Petitioner had not established grounds to waive a timely notice of appeal. *Audrey E. Downs v. State*, No. W2006-00718-CCA-MR3-PC (Tenn. Crim. App. Apr. 20, 2006) (order). The Petitioner sought permission to reopen his post-conviction proceedings in 2013, and his motion was denied because the issues had been previously determined. The Petitioner then filed a petition for error coram nobis in 2014, which was likewise denied by the trial court.

On March 16, 2015, the Petitioner filed a pro se "Motion to Request that DNA Found on Evidence not Belonging to Petitioner be Tested Against DNA Found in Backlog Rape Kits and That of The Victim & Appointment Of Counsel." In the motion, the Petitioner detailed that prior testing of a condom collected as evidence showed that he did not contribute the DNA on the condom. He requested that the DNA, which had been compared against his own and proven not to be a match, be compared to "DNA discovered from the backlog of rape kits being tested." He further requested that "the DNA be compared to that of the victim because there was never an effort to ascertain whether or not said condom contained DNA matching that of the victim." The Petitioner asserted that if the condom matched the DNA of the victim, then it would show it had been used in the rape of the victim and would prove the Petitioner's actual innocence. He asserted that a match against male DNA from another rape would show "that a rapist was in the location of the victim who[] was raped and that it was not the petitioner."

According to the trial court's 2018 order on the motion, counsel was appointed shortly after the petition was filed. The record contains no response by the State and no other relevant filings. On February 1, 2018, the trial court dismissed the petition. After summarizing the procedural history of the case, the court concluded that the testing sought by the Petitioner would not have any probative value because a match with evidence from another sexual assault would not overcome the substantial evidence tying the Petitioner to the crime.

On appeal, this court noted that while the Post-Conviction DNA Analysis Act of 2001 certainly contemplated summary dismissal, the trial court had failed to address any of the factors set out in Tennessee Code Annotated section 40-30-304. *Audrey Downs*, 2018 WL 6650597, at *2. Accordingly, the dismissal was reversed and the case remanded for the trial court to engage in the appropriate statutory analysis. *Id.*

On July 18, 2019, the trial court again summarily dismissed the petition. In analyzing the statutory factors, the trial court found that there was no reasonable probability that the Petitioner would not have been prosecuted or convicted if DNA evidence from the condom were matched to the victim or to any particular individual linked to another sexual assault. The trial court relied on the evidence tending to show

- 4 -

that the condom was unrelated to the crime in that it was discovered in an area known for sexual activity and approximately 175 feet from the body. The trial court further noted that the Petitioner had given detailed confessions, that he had demonstrated knowledge of details that would only be known to the perpetrator, and that his belongings were at the crime scene.

The trial court likewise found that the availability of the victim's DNA was "unknown." Noting that the petition "did not state whether the victim's DNA was available for analysis" and that the Petitioner presented no proof on the subject, the trial court found that the Petitioner "did not meet his burden."

The trial court also found that the testing requested would not resolve an issue that had not been previously resolved but would only confirm that the condom did not have the Petitioner's DNA. The trial court found that the Petitioner met the last statutory factor, that the petition was not made to delay the execution of the sentence or administration of justice. Having found that three of the four factors were not met, the trial court summarily dismissed the petition. The Petitioner appeals.

## ANALYSIS

The Petitioner asserts that the trial court erred in dismissing his petition for DNA analysis without holding a hearing. The State responds that the Petitioner is not entitled to a hearing and that the trial court correctly determined that the statutory factors were not met. We conclude that, because the petition failed to allege a prima facie case entitling the Petitioner to relief in the form of DNA testing under the statute, the trial court did not err in its dismissal.

We begin by emphatically rejecting the State's argument, made in a footnote of its brief, that the notice of appeal in this case was untimely. The trial court entered its order July 18, 2019, and the notice of appeal was filed on August 19, 2019, more than thirty days after the entry of judgment. *See* Tenn. R. App. P. 4(a). However, a cursory examination of a 2019 calendar reveals that August 17, 2019, the date that falls thirty days from the entry of judgment, was a Saturday, and that accordingly, the brief was not due until August 19, 2019, the date it was actually filed. *See* Tenn. R. App. P. 21(a).

The Post-Conviction DNA Analysis Act of 2001 provides for the opportunity to obtain DNA testing for offenders convicted of enumerated offenses, including first degree murder and aggravated rape. T.C.A. § 40-30-303; *Griffin v. State*, 182 S.W.3d 795, 798 (Tenn. 2006). Testing is mandatory when:

(1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

T.C.A. § 40-30-304. Additionally, the court may, in its discretion, order testing when:

(1) A reasonable probability exists that analysis of the evidence will produce DNA results that would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis, or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

T.C.A. § 40-30-305.

"Under either the mandatory or discretionary provision, all four elements must be met before DNA analysis will be ordered by the court." *Powers v. State*, 343 S.W.3d 36, 48 (Tenn. 2011). A reasonable probability under the statute is a probability sufficient to undermine confidence in the conviction or prosecution. *Id.* at 55.

In determining whether this standard has been satisfied, the court indulges in a presumption that the results will be exculpatory. *Id.* at 55; *Pervis Payne v. State*, W2007-01096-CCA-R3-PD, 2007 WL 4258178, at *10 (Tenn. Crim. App. Dec. 5, 2007). "The post-conviction court is afforded considerable discretion in determining whether to grant a petitioner relief under the Act, and the scope of appellate review is limited." *Dennis R. Gilliland v. State*, No. M2007-00455-CCA-R3-PC, 2008 WL 624931, at *3 (Tenn. Crim. App. Mar. 3, 2008). The post-conviction court's judgment will be reversed only when unsupported by substantial evidence. *Charles E. Jones v. State*, No. W2014-02306-CCA-R3-PC, 2015 WL 3882813, at *3 (Tenn. Crim. App. June 24, 2015).

"[T]he post-conviction court is not required by the Act to hold an evidentiary hearing in order to decide whether testing should be granted…." *Powers*, 343 S.W .3d at 56. The court may instead rely on stipulations by the parties and the recitation of facts in prior appellate opinions detailing the evidence at trial. *Id.* at 55-56. In *William D. Buford v. State*, the State filed a response to the petition for DNA analysis which included numerous affidavits demonstrating that the evidence sought to be tested was no longer in existence, and the trial court dismissed the petition without a hearing. No. M2002-02180-CCA-R3PC, 2003 WL 1937110, at *2 (Tenn. Crim. App. Apr. 24, 2003). The petitioner argued on appeal that he was denied a hearing and the right to cross-examine witnesses or otherwise put on proof. *Id.* The court in *William D. Buford* noted that the Post-Conviction DNA Analysis Act of 2001 "does not specifically provide for a hearing as to the qualifying criteria and, in fact, authorizes a hearing only after DNA analysis produces a favorable result." *Id.* at *3; *see Dennis R. Gilliland*, 2008 WL 624931, at *3.

This court's opinion in *William D. Buford* specified in particular that "*if the contents of a petition establish a prima facie case* and, after any response by the state, the trial court determines all statutory prerequisites are present, a petitioner convicted of one of the statutorily enumerated crimes is entitled to DNA analysis." *William D. Buford*, 2003 WL 1937110, at *6 (emphasis added). When the State contests the criteria and "it is apparent that each prerequisite cannot be established," summary dismissal is appropriate. *Id.*; *see State v. Gregory L. Hatton v. State*, No. M2015-01830-CCA-R3-PC, 2016 WL 4627401, at *3 (Tenn. Crim. App. Sept. 6, 2016) (dismissal was proper when the prosecution submitted a letter detailing fruitless attempts to locate evidence for testing); *Terrance Wilks v. State*, No. W2014-02304-CCA-R3-PC, 2015 WL 5719926, at *4 (Tenn. Crim. App. Sept. 30, 2015) (State's detailed response reciting the efforts to locate the DNA were a sufficient basis for dismissal); *Jimmy Wayne Wilson v. State*, No. E2003-02598-CCA-R3-PC, 2004 WL 1372832, at *4 (Tenn. Crim. App. June 18, 2004) (concluding that the defendant was not entitled to a hearing to contest the State's evidence that the DNA was no longer available). The *William D. Buford* court concluded the trial court's "conscientious effort" to make findings regarding the factors resulted in

"substantial facts" which supported the dismissal. *William D. Buford*, 2003 WL 1937110, at *6.

We conclude that a petition for post-conviction DNA analysis must allege a prima facie case for relief or be subject to summary dismissal. *See Charles E. Jones*, 2015 WL 3882813, at *4 (noting that the petitioner failed to assert how a favorable test result would result in a more favorable sentence or verdict and accordingly failed "to pass the first procedural hurdle," negating the necessity for the State to "answer for the availability of the evidence"); *Caleb J. Belcher v. State*, No. E2014-00649-CCA-R3-PC, 2014 WL 4748351, at *2 (Tenn. Crim. App. Sept. 25, 2014) (petitioner failed to explain what evidence was in existence); *Johnny Phelps v. State*, No. E2005-02405-CCA-R3-PC, 2006 WL 2328661, at *3 (Tenn. Crim. App. Aug. 11, 2006) (concluding that dismissal was appropriate for a variety of reasons, including that the petition failed to raise a cognizable claim because it asserted that no biological evidence was collected); *Willie Tom Ensley v. State*, No. M2002-01609-CCA-R3-PC, 2003 WL 1868647, at *4 (Tenn. Crim. App. Apr. 11, 2003) ("[I]t is our view that the petition need only establish a prima facie case, the basic allegations addressing the qualifying criteria, to instigate a factual assessment."); *cf. Steven Griffin v. State*, No. M2003-00557-CCA-R3-PC, 2004 WL 1562390, at *4 (Tenn. Crim. App. July 13, 2004) (concluding that a "conflict in the pleadings" was not overcome by the State's "blanket, unsworn" response), *rev'd on other grounds by Griffin v. State*, 182 S.W.3d 795 (Tenn. 2006); *Roger L. Smith v. State*, No. E2003-00094-CCA-R3-PC, 2003 WL 22351131, at *2-3 (Tenn. Crim. App. Oct. 16, 2003) (the petition set forth facts establishing a prima facie case and required a response from the State and findings regarding the statutory factors from the trial court).

In this case, the contents of the petition do not allege a prima facie case for relief under the Post-Conviction DNA Analysis Act. The petition failed to allege that the evidence was in existence and susceptible to DNA testing or that there was a reasonable probability the Petitioner would not have been prosecuted or convicted or would have received a more favorable sentence or verdict with the requested DNA results. In particular, nothing in the record, including the pleadings, reflects whether any DNA was ever collected from the deceased victim or whether there was female DNA on the condom.

The Petitioner contends that because the trial court found that the availability of the victim's DNA was "unknown," it was required to hold a hearing to make a determination regarding this factor. Not so. It was the Petitioner's burden to allege a prima facie case for post-conviction DNA analysis. The petition was filed in 2015 and was not amended by counsel during the five intervening years.[2] We note that, during the

---

[2] The Petitioner was represented by a different attorney on his prior appeal.

five years that the petition was pending, the State also failed to file a response. In the understated words of the opinion in *Willie Tom Ensley*, "That would generally be helpful." *Willie Tom Ensley*, 2003 WL 1868647, at *4. Nevertheless, because the pleadings do not allege grounds for relief, the trial court did not err in dismissing the petition.

## CONCLUSION

Based on the foregoing reasoning, we affirm the trial court's judgment.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE